## JOHN J. CRAIG COMPANY v. C. E. CHAMBERS.

Eastern Section.   March 28, 1931.

Petition for Certiorari denied by Supreme Court, May 5, 1931.

Gamble, Crawford & Goddard, of Maryville, and W. J. Donaldson, of Knoxville, for plaintiff in error.

Kramer & Kramer, of Maryville, for defendant in error.

PORTRUM, J. The plaintiff, C. E. Chambers, recovered a judgment for $4,000 in the lower court, and the defendant, John J. Craig company, appealed.

The defendant company owned and operated a large marble quarry in Blount County, Tennessee, and had in its employ the plaintiff, C. E. Chambers, a man twenty-seven years of age, as a helper on a chandling machine used in the removal of marble. While so engaged, on June 14, 1927, he was injured by falling marble. The quarry was probably thirty feet deep, and covered a considerable area. Chambers was working on the floor of the hole, and at the time of the accident was drilling holes in the rock in order that a track might be placed for the operation of the chandling machine. An electric derrick was operated on the ledge at the top of the quarry and used in removing blocks of marble which had been cut out of the side by the chandling machine. In order to remove the blocks of marble, holes were drilled in the sides and grabs inserted in these holes, and the grabs attached by means of a large chain or cable with an electric derrick. The blocks of marble were hoisted away from the hole. Occasionally in removing these blocks, pieces or stalls of marble would break off and fall into the quarry.

During a hoisting operation it was a custom or rule of the company to blow a whistle before removing the blocks in order to warn the men below. If the men did not leave the quarry then they were told to by some one who had looked to see if they had heard the warning whistle, for, sometimes on account of the noise, it was necessary to throw dirt or gravel at the men in order to call their attention to the operation, and to warn them to move from the place of danger.

On this occasion, the block of marble was being moved from the top of the quarry near the edge of the ledge. A warning signal was blown and a pull was made on the rock. The workmen heard the signal and left the bottom before the pull was made. It was seen that the grabs would not hold and therefore the derrick was released and the holes in the block of marble were chiselled deeper. This operation required from ten or twenty minutes, and the plaintiff had returned to his work below and was absorbed with his duties. Without again warning him, the workmen replaced the grabs and the derrick attempted to hoist the block, but in the attempt a huge stall containing a cubic foot or more of rock was torn from the block and hurled down into the quarry. The workmen seeing the parting rock, and realizing the impending danger to the men below, hollered, "Look out!" Chambers heard the cry of warning and the noise of the falling rock and dashed from his position under the wall out into the floor of the quarry. He ran a

distance of about twenty feet when he was overtaken by the falling rock which crushed his leg.

The foreman states that if the plaintiff had remained at his place of work, he was at a place of safety and would not have been injured. He gives as a reason why he did not warn him that he was of the opinion the plaintiff was in a place of safety. If the plaintiff were at a place of safety, he was entitled to warning to remain there; and when the danger became imminent he was warned to look-out, but it was then too late.

The plaintiff's leg was badly injured; both bones in the lower part of the right leg were broken, and one of these, the tibia, was broken in two places, leaving a loose bone of from three to four inches in his leg about a third of the way between the knee and the ankle. The muscles were badly bruised and lacerated and the broken bones had protruded through the skin. It was necessary to cut away the flesh from around these bones.

The plaintiff was taken to the hospital in Knoxville, and remained there for seventy-four days; he then went to his home, but later returned to the hospital and stayed for a period of seven weeks. His recovery was unfavorable. At the time of the trial, which was more than three years after the accident, the tibia had not yet united, and this made it impossible for him to bear his full weight upon the leg.

The declaration contains three counts, and two, of the many grounds of negligence, are: (a) that the defendant failed to furnish the plaintiff a safe place to work; (b) and that the defendant failed to observe its rules, made for the safety of its employees, to give timely warnings of the impending dangers incident to the work.

The defendant filed a plea of not guilty. At a later term, it filed two additional pleas, one of accord and satisfaction and another of set-off. To the second plea, the plaintiff filed a replication, denying that he made any agreement or received any sum in satisfaction of his cause of action. He demurred to the third plea, which was overruled, and he then filed a replication denying that he was indebted to the defendant in any sum.

Thereafter the defendant filed an additional plea, setting out that while it was not operating under the Workman's Compensation Act, yet it had offered and paid to the plaintiff sums of money equal to and in conformity with the amount fixed by said compensation statute, and that these payments were accepted by the plaintiff, and that such conduct amounted to a waiver on the part of the plaintiff of any right to any action at law. To this plea, the plaintiff filed a replication, claiming that the defendant did not tender, and the plaintiff did not receive, any moneys in accordance

with or by virtue of the provisions of the Tennessee Workman's Compensation Act. Upon these issues the case was submitted to the jury.

The facts of the case, as hereinbefore stated, are sufficient to carry the case to the jury, and the judge committed no error in failing to sustain the motion made at the conclusion of the evidence for a directed verdict in favor of the defendant; nor was he in error in failing to overrule the motion for a new trial upon the ground that there was no evidence to support the verdict.

" 'Where an employee is at work in a place safe in itself, but which by virtue of some independent work done for the master's purpose, becomes dangerous, unless prior warning of the impending danger be given, and when the master had required such notice to be given, or has assumed to customarily given such warning through an employee, the person charged with that duty is a vice-principal. For his negligence therein, the master is liable.' " Manees v. Coal Corporation, 128 Tenn., 141.

"When the employer has adopted a system for the purpose of notifying servants of the approach of a certain . . . danger, it is plain that the servant having relied on the receiving of the customary warning, and being aware that he was not carefully watching as he would otherwise have been, constitutes a specific and additional reason for holding the master liable for injuries which may result from the omission to give the warning on some particular occasion." 3 Labatt on Master and Servant (2 Ed.), sec. ·1112.

There was no compromise, nor an accord and satisfaction of his claim, established by the undisputed proof. The defendant removed the plaintiff to the hospital, and paid his doctor's bill and hospital expense; it made provision for his family out of its commissary and paid him a sum of money. The sum total advanced amounted to $1200. There was no contract nor agreement that these advances should be in full satisfaction of the plaintiff's claim. The proof establishes this fact only, that the defendant made the advances without an agreement, and the plaintiff accepted them.

"To constitute accord and satisfaction, an offer must intend to satisfy the obligation, and is acceptable with the intent that it shall operate as a satisfaction or payment." Lytle v. Clocton, 148 Tenn., 655.

We will permit counsel to state defendant's contentions:

"Because the evidence plainly shows that, after the accident in question, plaintiff was tendered by the defendant and accepted as compensation for any claims he might have against defendant, sums of money and expenditures equal to and in conformity with the amount tendered which is provided by the Workman's Compensa-

tion Statute of Tennessee and . . . to which plaintiff would have been entitled, if the parties hereto had been operating under said statute, and this bars plaintiff's right to bring this suit at law."

There was nothing said in reference to the compensation statute when the advances were made. The plaintiff may not have known such a statute existed. The most favorable view for the defendant is that it paid a sum equal to the amount it would have paid had it been operating under the Workman's Compensation Statute.

This statute was enacted for the benefit of employees who sustained industrial casualties, without reference to the nature or the character of the service. The history of this legislation is well known. The employers, almost generally, resisted its enactment; and to meet the objection of the employer, it was left optional with him whether he would operate under its provisions. If he did, there were certain compensations available to him, which tended to equalize the additional burden assumed. For instance, the common law liability was reduced, and this compensated him for the assumption of the statutory liability. It was also thought wise to coerce the employer to operate under the statute by denying him certain of the common law defense in those cases where the servant had elected to operate under the law. It is clear that the legislative policy was to encourage all employers to operate under the statute and thereby afford some protection to all their employees.

In this case, we have an employer by declining to act under the statute and partially protect all of its employees, now seeks to take full advantage of the compensation statute by paying the amount. In other words, in those cases where liability exists under the common law, it will pay according to the rates of the statute, but where liability does not exist under the common law, it is under no obligation to pay at all.

We think this insistence is contrary to public policy and to uphold it would make of the statute an instrument of oppression. Few would qualify if they would gain its benefit and escape liability by voluntarily offering to pay according to it rates.

The freedom of contract is not involved for when the employee agrees the payment shall be in satisfaction of the claim he is bound by the agreement.

The next specification under the ground that there is no evidence to support the verdict is, that the plaintiff was paid the full loss he has suffered by the advancement of $1200, which the plaintiff had received, and which was sufficient to fully satisfy the whole claim, and the defendant pleads the payment as a complete set-off against the claim of the plaintiff. It was for the jury to say whether this was a complete or a partial payment.

Next, counsel assigned as error the argument of the plaintiff's counsel before the jury. The substance of the argument, as stated in the assignment, was taken from an affidavit filed on the motion for a new trial, by the superintendent of the defendant company. Counsel's statement, taken from this affidavit, covers several pages óf the brief, and is too long to be reproduced here. Plaintiff's counsel also made an affidavit giving his version of what was said in argument. On the issue made upon these two affidavits, the circuit judge permitted a statement to be made in the bill of exceptions of just what was said in argument. We can look only to the statement found in. the bill of exceptions, and not to either of the affidavits. During the argument, no exception was made to the statements of counsel, and the circuit judge was not asked to caution the jury in the charge in reference to the so-called inflammatory remarks. The question was raised for the first time in the motion for a new trial. Counsel say they are excused from not interrupting the argument and objecting because it would cause more harm to their side if they had. This would have been true had the objection not been well founded; had the court erred in overruling the objection, or if counsel had persisted in the argument after the objection had been sustained, then this Court would be warranted in critically examining the statement. Or if counsel had called it to the judge's attention after the argument, but before the jury had been charged, and if the court had declined to properly instruct the jury, then the question would have been open here. This is the general rule, but there are exceptions to this rule. When counsel wilfully disobey the court or make such unwarranted and damaging statements that it cannot be removed by the action of the judge,—amounting to the denial of a fair trial—then the question is properly reviewable in this Court. Did the statements of counsel amount to a denial of a fair trial? Counsel referred to the enactment of the Workman's Compensation Act, and stated that all employers of laborers in this section, including the Aluminum Company of America, were operating under the Act except the defendant.

The substance of this argument was to meet the inference made by the defendant in this case that all other companies were permitted to pay their injured employees according to the scale of the Workman's Compensation Act, and that it should not be made an exception and required to do more than other companies would have tó do. If this argument were not supported by the proof, then a timely exception would have confined counsel to the record.

The bill of exceptions states:

"Counsel referred briefly to a case against the Babcock Lumber Company, wherein two employees of the Babcock Lumber Company lost their lives in a forest fire in Blount Company. Said counsel in his closing argument also referred to a case against the Southern Railway, wherein an engineer, after applying the brakes on his train, in passing an open switch, jumped off the train and lost his life."

The bill of exceptions nor the defendant's affidavit does not state what counsel said in reference to these cases. He may have said these cases show it is usual to give a larger judgment than that fixed under the Workman's Compensation Act. Or he may have commented upon the inevitability of death.

Again, "Said counsel for the plaintiff stated that the defendant should not be allowed to butcher its employees in this state and escape liability. Said counsel also said to the jury: 'Do not turn the plaintiff and his wife and children away without compensation for his broken leg; don't come in here with a little old verdict for two or three thousand dollars—this would not be enough to pay the expenses and attorney's fees if the case should go to the Appellate Court; before God, it is my honest opinion, that you should give him $————."

Complaint is made to the use of the word "butcher;" the reference to the wife and the children, and the use of the words "before God."

The word "butcher," among other things, means: to ruin by bungling treatment. The word, while a strong one, was an appropriate word.

The reference to the wife and children and to God was not an abuse of the latitude allowed counsel in argument. The argument was emphatic and emotional, and may have influenced the jury. This is what argument is for, and is the birthmark of a great advocate.

The superintendent characterizes the argument as follows:

"That in said closing argument, said counsel (R. R. Kramer) for plaintiff, frequently appealed to the Deity, and in conclusion shed tears and showed great anguish by his facial expression, which added to the emotional appeal to the jury. This appeal had a very visible effect upon the jury, from the expression in their eyes and faces, as well as upon every person sitting in the court room, evidencing the fact that the sympathy of the jury was very much touched by the appeal of said counsel."

Another assignment complains to the judge's charge, wherein he stated the defendant could not rely as a defense upon the employee's negligence, or the negligence of a fellow servant or employee, and

that the defense of the assumption of risk was not available. The reason that this was error, as contended by counsel, was that there was no evidence that the defendant had failed to elect to operate under the provisions of the Workman's Compensation Act. Therefore, the judge denied the defendant his common law defenses. The defendant in its pleading admits that it was not qualified or had not elected to act under the Workman's Compensation Act. However, if this were error, there is no evidence in the record that either of the defenses was available.

The court directed the jury that it could not look to the plea of set-offs, and he said:

"In other words, any payment that has been made cannot be set off against unliquidated damages in any lawsuit."

If this were error, it is harmless error. The defendant ought to be allowed to show any payments it had made to the plaintiff; the Court recognizes this for it gave the defendant all benefits for the payments made. He charged the jury that the plaintiff was entitled to recover for medical expenses and doctor's bills, but stated there was no claim made for doctor's bills or hospital expenses, with the exception that the bill of one doctor was questioned. He stated that the plaintiff was entitled to recover for physical suffering and was entitled to recover also for his loss of time. He directed the jury to give the defendant credit for payments made towards the time lost. The jury could not have misunderstood that their verdict was to represent the amount due to the plaintiff after giving the defendant credit for the payments made.

Was the verdict excessive? The X-ray photographs are not before this Court, for some reason, but as stated they showed that the tibia was still disunited and that it was something like one and one-fourth inches out of position. It also shows that the fibula is three-fourths of an inch out of position. At the date of the trial, which was several years after the accident, the bones had not reunited. In place of a union there was a false joint so that the leg bends. There was also a large lump or callus at the place where the bones should have re-united. This condition is permanent, and the plaintiff is unable to bear his full weight upon this leg. He showed the injury was a very painful one.

Dr. Nash testifies that, by submitting to another operation, these bones may be grafted and caused to reunite. The defendant insists the plaintiff should be required to submit to this operation or have his damages reduced. The doctor admitted that the operation might not prove successful. It is only his opinion that a favorable result might be obtained by an operation. On the other hand, by submitting to an operation, the plaintiff may lose his life. The law

does not make it imperative upon the plaintiff to submit to an operation of this character. The compensation statute which requires an operation under some circumstances is not applicable. In our judgment, the verdict is not an excessive one.

The judgment of the lower court is affirmed, with costs.

Snodgrass & Thompson, JJ., concur.